May it please the Court. My name is Carlos Cruz, and I represent the petitioners Mr. and Mrs. Hassan. Would the Court like a brief presentation of the facts? My guess is we're all very familiar with them. Thank you, Your Honor. Your Honor, in this particular case, the Court should reverse the decision of the Board of Immigration Appeals affirming a denial of the petitioners' applications for political asylum, withholding of removal, and relief from the torture convention based on the following three reasons. First, there is insubstantial evidence to find that the petitioners were only persecuted on account of personal revenge and not political opinion. Second, the evidence in the record compels the conclusion Counsel White, I realize there's evidence from which the I.J. could have and arguably should have found that this lady was persecuted because of her anti-corruption article in the newspaper and that that is a political opinion hostile to corruption. However, the I.J. didn't say that such an anti-corruption position could not be persecution for political opinion, just that it wasn't in this case. And our deferential standard of review requires us to deny the petition if that's permissible on the evidence. Why isn't it permissible on the evidence? Your Honor, it's not permissible in this particular case because the immigration judge failed completely to apply the legal standards set by this Court in Grava v. I.M.S. Be a little more specific about Grava, because I understood it to allow for that possibility of going the other way. Yes, Your Honor. The specifics there involve the following, that where you have an individual who is exposing government corruption, that the key question that the Court must address is whether the article was directed at a government institution or whether it was directed against an individual whose conduct was aberrational. And here, the conduct was neither aberrational nor was the article directed specifically toward that one individual. Now, it is true that the article does use the local chairman of the Union Town Council to illustrate the corruption, but the article contains clear pieces of evidence that address other members of the government. For example, the article addresses the police enforcement, and clearly the article provides that the local authorities had repeatedly ignored acts of murder, arson, drug trafficking, smuggling, misappropriation of funds. It further provides that others were also involved. I'm thinking if you were in Massachusetts and you wrote an article saying that it's a really bad thing that the, as some articles eventually did, I don't know if it's true, that the head of the mafia was brothers with the majority leader in the legislature and that the mafia was in bed with the FBI. That's what the article said. I don't know if it's true. I imagine that whoever wrote those articles was nervous about it. That is absolutely true, Judge, but the difference is... If they, would that be any different from this case? It would be, Your Honor, because of the consequences that resulted from the publication of such an article. There, the issue becomes whether or not she was in fact persecuted as a result of the political opinion that was exposed in that particular article. And given that, A, law enforcement was mentioned in the article and that the article also involved ministers within the government, higher government officials, the article was directed not only at the individual, but at the government institution. In fact... So what would differentiate Massachusetts is what happened to her after the article. That would certainly be, yes, Your Honor, because... Isn't it true also that this is Bangladesh and not Massachusetts, and the consequences are quite different? If I just pursue, assuming that this Court agreed with you, wouldn't we have to remand under the Ventura case? Your Honor, the issue here is whether or not the government has been able to rebut that presumption of a well-founded fear of future persecution based on the past persecution. Indeed. And in this case, Your Honor, in Borja v. INS, in fact, Judge Kleinfeld joined a dissenting opinion that said that we must look to the State Department reports to determine whether or not there would be such a fear of future persecution. And in this case, the State Department report is very persuasive regarding that possibility. For example, the State Department report provides that there are numerous extrajudicial killings that brought that corruption is widespread, and that these acts, both the corruption and these extrajudicial killings, go unpunished by the government. And so given the evidence in the record, given the evidence found in the State Department reports regarding that issue, there would be no need to remand this case. The Court can take note of the information found in the State Department report to make that finding. And I would urge the Court to do that. Well, never mind notes. Didn't the I.J. find that there was persecution and the only question was the nexus? Yes, Your Honor. If we disagreed on the nexus, then we'd say there was persecution and there's no evidence put in to show that there's been a change in country conditions, and that's the end of it, isn't it? Your Honor, the judge did find that there was past persecution but didn't find a necessary connection between the persecution and the political opinion. If I may also note, Your Honor, regarding other elements in the record that show that there was persecution on political opinion, in addition to the article naming law enforcement, naming other government officials, there's also the issue here of the posters that were placed throughout the town after the article was published   that there was persecution on political opinion, in addition to the article naming The poster was clearly political in nature, it was intended to discredit Mrs. Assange, and certainly it was further intended to minimize the political harm that the article had caused the chairman. And lastly, there were also the statements that were made to both the petitioner's father when he was attacked and statements that were made to the petitioner's husband when he was attacked to the point of unconsciousness. Let me ask you something about that. It looked to me like the father and the husband had real problems on account of the article. But maybe I'm forgetting something, but as I recall, the main thing that happened to Hassan is she fell and bumped her nose, and then her maid helped her inside. Your Honor, as these individuals were coming toward her home and were beginning to break into that home, she was able to flee her home, and on the way out she did bump her nose, causing a bloody nose, and also bumped her stomach at the time she was pregnant. And the issue here, Judge, is not whether that was the necessary harm amounting to either persecution or perhaps even torture, but clearly every particular piece of evidence, every attack, in the end ---- Falling and bumping your nose and your stomach as you're running, I don't think you could claim that that's persecution or torture. No, Your Honor. I wouldn't make that claim, but I would claim that every other issue, every other incident affected the lead petitioner. For example, knowing that her father had been attacked affected the lead petitioner. Knowing that her husband had been beaten to the point of unconsciousness severely affected the petitioner emotionally. Knowing that her brother had been beaten after he refused to reveal their location affected her severely. Knowing that they had threatened to bite her like a vulture, which is set forth in the record, had a severe mental effect on this particular individual. And given that the torture convention provides for both, both physical cruelty or physical torture and the possibility of finding torture on the basis of some severe mental anguish, certainly there was clear severe mental anguish in this particular case as well, Your Honor. But, Your Honor, again, going back to the issue of persecution on account of political opinion, the issues, the statements that were made by the individuals in which they stated, we know that your wife has been involved with the women's organization, both to the father and to her husband. Now, we do not claim that there was persecution on account of a social group. However, those statements revealed that they were aware of that association. Hold on. I'm confused about something. Yes, Your Honor. What we're talking about is past persecution of her rather than a well-founded fear of persecution of her right now. I can see where the beatings and such of her husband and her father and her brother could give rise to a well-founded fear, but I can't see where their past persecution of her. And I also can't see where falling and giving herself a bloody nose and bumping her stomach and then being helped inside by her maid is past persecution of her. Yes, Your Honor. So I'm confused about something. Your Honor, the past persecution of her in this case occurred not only because of the physical harm that you've mentioned, but also because she was threatened. They were going to bite her like a vulture. They threatened that they would, that the day she stepped back in Bangladesh would be the last day, her last day on earth, threatening to kill her. And lastly, those posters called for someone that held specific views against individuals with anti-Islamic activities to take action against her. I think somebody else got threatened, didn't they? Yes, Your Honor. There were several individuals in this case that were threatened. Counselor, am I confused or did they set her room on fire? We've got so many cases. Yeah, I'm sorry, Your Honor. They did set the room on fire. They vandalized the home and set the bedroom on fire. They also did that, Your Honor.  Thank you, Counselor. Thank you. You have 41 seconds. Thank you, Your Honor. Counsel? Good morning, Your Honors. If it pleases the Court, my name is Alison Drucker. I'm representing the United States. Petitioner seeks asylum, withholding of removal and protection under the Convention Against Torture, also known as CAT. Relief has already been denied by an asylum officer, by the immigration judge, and by the board. Counsel, help me on something here. When I read the record here, I thought, well, corruption is really a major political issue in many countries of the world. Opposing corruption, there are people who hold the political opinion that the main thing that makes the third world the third world is that corruption imposes such a heavy tax on enterprise and industry. And opposing corruption can be a very significant political action. This lady opposed corruption in the newspaper, and the corruption, like all serious corruption, was tied to the government. It wasn't just one crook, as the IJ seemed to say. The crook had protection, according to her article. But why isn't, if what was done to her is persecution, why isn't that persecution on account of political opinion? Well, the case law of this circuit requires that in a government corruption situation, that the applicant show that the persecutor actually imputed a political opinion. Why isn't this political opinion? And how do you distinguish the Grava case? Okay, well, just because the alleged persecutor is a politician does not automatically make the basis political opinion. That's Molina Morales. And the burden is on the applicant. Now, in the case law, and I'll get to Grava in just a second, in the case law, there's a number of cases that deal with this type of situation. And one way that a political ---- Oh, wait a minute. She says it's a dirty union, and the union boss is the crook and dope dealer. And then she says that the dirty union is associated with the ruling political party, and whichever party comes to power from time to time. This chairman, the chairman goes with whatever party is in power. The chairman isn't wedded to any kind of, you know, one party or the other. He just wants to, you know, make money and extort money, whatever, whoever's in power. Now, it's true that there are, you know, police, some police and some others who are apparently being influenced by him. He's presumably bribing them. But at the same time, in the facts of this case, if you look specifically at the article that she wrote, which I think is what you're quoting. That's what I'm looking at. Right. Okay. Now, that article specifically also says that he's the chair of something called the Union Parashad. And that article also specifically says that other members of the Union Parashad were opposed to him and the corruption and what he was doing and were protesting. And the article also, so I mean, clearly, it's not like the whole government unit was going along with what this guy wanted to do. A lot of people were not. Also, the article, at the end of the article, the author actually is asking for help, you know, sort of going up the ladder, going upstairs to try to get help from the home minister. So clearly, the article isn't suggesting that the whole country is corrupt or the whole government is corrupt, but rather that other people at the same level basically as the chairman and above the chairman are not corrupt and are people that she is calling, you know, expects their help and is calling for their help. But let me just say, since time is limited, in Grava we held, when the alleged corruption is inextricably intertwined with the government operation, the exposure and prosecution of such an abuse of public trust is necessarily political. Okay. But the facts in Grava were sort of different because they involved a government prosecutor. I mean, there were two people, if I remember this correctly, there were two, the prosecutor and the person who was trying to retaliate were both part of the government and they were allied with different political parties, and that situation as a whole made it political. That is not the situation here. And here, in fact, in the record, there is voluminous evidence. The Petitioner says over and over when she's asked in her testimony, why was the chairman, you know, coming after you? Why was he doing these things? That it's not because of political opinion, that it's not because she was a member of the BNP, that it's not because she was active at the Women's Center. I quote from the record, I cite to pages 175, 222 to 224. Her husband's testimony, same thing. I cite to the record 259. I think at one point he makes some suggestion at 265 that it might have something to do with her women's activities, but then he sort of recants at 292. There's also material in the record about what the assailants said, you know, while they were attacking the family members. That's at 176 to 77, 250, 258 in the record. And again, the total emphasis is on the fact that she wrote the article, not on any wider, you know, political nexus to this. I think if you fairly read also, there's a, besides the article where she criticizes the chairman, in the record there's another article, a contemporaneous article, which was describing the retaliation that was taken against her and her family. That's at 375 to 81. And that article also talks about, you know, he didn't, the chairman didn't like this criticism and he wanted revenge. So that's definitely the theme that comes across over and over again in the administrative record. And that's why the substantial evidence supports the conclusion. Imagine that you were writing the disposition in this case. Recite the paragraph in which we discuss Grava. Okay. Well, I would distinguish Grava because in Grava, you have that sentence that you mentioned that talks about inextricably connected or some such. Okay. But the facts in that situation are different from the facts here because those are a prosecutor and then the person's being prosecuted. They're both members of political parties, political organizations and opposing political parties. And in that sense, this is all part of a political dispute. Here, this is a private individual. The author of the article is a private individual. And she's criticizing this person and there's no other evidence. Well, I shouldn't say no other evidence, but very little compared to the evidence that supports the government's position that this was revenge and not in a wider context. Now, there's also language in Grava that goes on and says the salient question. I didn't quite follow what your paragraph would say. Are you telling us it would say something like Grava was a case of somebody attacking corruption within the government itself? This is a case where there's a corrupt person who has some tentacles into the government, but he is not the government itself. I'm saying that both the critic was a prosecutor and that the prosecutor and the person he was criticizing, who was then feared retaliation from were both parts of the political system. And they were part of the government. Right. Yes. And political. He was a whistleblower is what it comes to. And they were political opponents. Right. I think they were in different political parties. That's not the situation here because both people are not part of the government. And you don't have two different political parties, you know, sort of slugging it out. The chairman didn't care what party he was. And in a sense, what party she belonged to was irrelevant in terms of what's shown in this record. Let me just refer you, if I may, to footnote 3 of Grava, which says many persecutors have mixed motives. In such instances, personal retaliation against a vocal political opponent does not render the opposition any less political. Dot, dot, dot. OK. Can I just finish by Grava and then I'll get right to that. OK. Now, there's also a sentence in Grava that says the salient question is whether Grava's actions were directed against a governing institution or against individuals whose corruption was aberrational. Now, I've already tried to to explain our position that we think in the situation with the chairman, even though he had running dogs, if you will, that was still corruption that was aberrational because that article shows that she also thought that other parts of the government were not corrupt. OK. Now, getting back to mixed motive, I think this is a question here of of the application of the substantial evidence standard. I think it would be fair to say that it's it's possible that somebody reading this record might come to the conclusion that this is a mixed motive case. That's not impossible. But there is substantial evidence, more than more than substantial evidence, I believe, to support the view of the immigration judge and the board here that this was only revenge and it was not political. Thank you, counsel. Your Honor, first, Grava involved a police officer. He was a customs officer, not a prosecutor, and he was revealing corruption against one of the supervisors. But the interesting here is that the petitioner never asserted that she was not being persecuted on account of political opinion. The political asylum application provides her claim was based on political asylum. And at page 123 of the record, she provides that the chairman was trying to harm her politically. There is evidence in the record that she never stated he's not trying to harm me politically. She said, yes, he's not trying to harm me because of my social associations with the group, not because of my membership in the VNP party, but never said. Nowhere in the record will you find that the petitioner stated he is not trying to harm me because of my political opinion. In addition, Your Honor, the article by – and I see the amount of time – in this case, Your Honor, given that she was persecuted on account of political opinion and that the government has failed to rebut the presumption, we urge the Court to reverse the decision by the Board of Immigration Appeals. Thank you. Thank you, counsel. Hassan v. Ashcroft is submitted.
judges: Dw Nelson, Fernandez, Kleinfeld